## HARLAN *v.* STOUT.

PARTIES.—A tenant in common, not a party to proceedings in partition on the part of his co-tenants, is not effected thereby in any manner.

PARTITION—PURCHASER OF COMMISSIONER.—The fact that one of the parties in interest was not a party to proceedings in partition in which the land was ordered to be sold by a commissioner, would be sufficient of itself, on the application of the *bona fide* purchaser at such commissioner's sale, to set the same aside.

PARTITION—NON-CONFIRMATION OF SALE.—As to facts which would make it the duty of the Court, on the application of the owners, or part of them, to set aside a sale of land made by a commissioner in partition; see the opinion at length.

APPEAL from the *Marion* Circuit Court.

PERKINS, J.—*Henry Miller*, one of the heirs of *Jacob Miller*, deceased, filed his complaint for partition in the *Marion* Circuit Court. The property of which partition was sought, was a lot in *Indianapolis*. The defendants made default. Commissioners, appointed to make a partition, reported the property not divisible, &c.; an appraisement of it was made and reported; a sale, at private sale, was ordered; a commissioner to make it appointed; a sale was made and reported, but, at the term of the Court when the report came up for confirma-

tion, a portion of the heirs appeared and resisted the confirmation and moved to set aside the sale made. The Court overruled all objections and confirmed the sale. An appeal was taken to this Court.

The only question is, should the sale have been set aside?

The written motion to set aside the sale rested on three grounds:

1. The omission of the name of one of the heirs in the complaint and notice for partition.

2. Mistake or fraud in the sale made.

3. A sale made at much less than the property sold would bring.

Had the purchaser applied to set aside the sale on the first ground, it would have been sufficient of itself. Not so, when the application is made on the part of the heirs who were made parties, and no special injury is shown to have resulted to them from the omission to make others parties. Still, public policy requires, not only that the interest of the parties should be well cared for, but that titles, also, should be made good and litigation avoided in judicial sales, and the question of parties might have its weight with other facts. The omitted heir is not bound by the proceedings, and may have relief. See Bick. Pr. 542.

On the second and third points, we think the sale should have been set aside.

The property in question was situate in *Indianapolis*, and the sale was advertised only by notices posted up at certain places, a mode not as likely, we think, in a business city, to bring the notice to the attention of those likely to purchase property, as by advertisement in the daily papers.

The property was sold for 2,500 dollars, on payments, at at which sum it had been appraised.

On the trial of the motion to set aside the sale, the following witnesses testified, touching the price of the lot, thus:

*Mr. Burton,* said the lot was worth 2,700 dollars. He did not say it was not worth more.

*Mr. Douglass,* said it was worth 2,300 dollars. He did not say it was not worth more.

*Robert George,* said it was worth 3,000 dollars. Did not hear it was for sale till after the sale.

*D. B. Hosbrook,* would give 3,000 dollars for the property, cash down. Did not know it was for sale till after the sale.

*Susannah Harlan,* would give 3,000 dollars for the property; was able to buy it.

*Alexandrine McCarty,* had agreed to give 3,000 for the lot, if title could be made in time.

*Mr. Vincent,* was willing now to give 3,000 dollars for it.

*Mr. Stout,* the purchaser, says the property was worth but 2,500 dollars.

The testimony, as to the circumstances under which the sale took place, is as follows:

*Mr. Fishback,* the commissioner for sale, states:

"*Mrs. Fetty,* one of the heirs, called before any negotiations of sale had taken place, and said she wanted 3,000 dollars for the lot. I requested her to find a buyer. One day I found *Mr. Stout* in my office. He wanted to buy the property. I told him to see *Mrs. Fetty,* and report, and that report would govern in the sale. He reported that *Mrs. Fetty* consented to a sale at 2,500 dollars. That report controlled my action in selling to *Stout* at 2,500 dollars; but, for it, I should not have sold. Soon after the sale, the parties interested came to my office, and objected to the sale. If I had not been influenced by *Stout's* report from *Mrs. Fetty,* I would not have sold. Had not sold property to *Stout,* when the latter went to see *Mrs. Fetty.*"

*Mrs. Fetty* states that she never consented to a sale, for less than 3,000 dollars; that she told *Mr. Stout,* all the time, that

that was the lowest sum. She consented in no manner, to anything less.

*Mrs. Mathews* says she heard the conversation at the interview between *Mrs. Fetty* and *Mr. Stout*, and that *Mrs. Fetty* told *Mr. Stout* all the time, and when he left, that she consented to no sale for less than 3,000 dollars.

*Mr. Stout* says he saw *Mrs. Fetty*; told her he had bought the property of *Fishback*, the commissioner, for 2,500 dollars; she objected, but said *Fishback* was commissioner and could do as he pleased. I told *Fishback* that *Mrs. Fetty* did not want to take 2,500 dollars, but as her brother wanted money, he, *Fishback*, might do as he pleased.

On all the facts of the case, the Court should have set aside the sale, had proper parties made in the petition and notice, &c., at the proper time, ordered a re-sale, &c.

*Thomas A. Hendricks* and *Oscar B. Hord*, for the appellants.
*L. Barbour* and *J. D. Howland*, for the appellee.