## BASS v. McDONALD ET AL.

[No. 3,988.    Filed October 15, 1902.]

RECEIVERS.—*Sale of Mortgaged Property.—Deposit to Secure Resale.— Forfeiture.—Distribution of Deposit.—* The receiver of a corporation was directed by order of court to sell the property and apply the proceeds, after paying costs and expenses, first to the payment of a mortgage thereon. The property was sold to the mortgagee for a sum less than the amount of his mortgage, and a resale was ordered upon the application of creditors who guaranteed that the property would sell for ten per cent. more than was bid at the first sale, and, as evidence of their good faith, deposited a forfeit of a certain amount. The mortgagee became the purchaser of the property at the second sale at the same price bid at the first sale, and the money deposited by the creditors as a forfeit was paid to the receiver without objection. The bid and the sum forfeited amounted to less than the mortgage debt. *Held,* that the deposit made by the creditors and forfeited should be paid to the mortgagee.

From Marshall Circuit Court; *A. C. Capron,* Judge.

Application by John H. Bass to require the receiver of the Plymouth Cycle Manufacturing Company to pay the balance remaining in his hands to applicant as mortgagee, to which Daniel McDonald and other general creditors demurred. The court denied the application, and plaintiff appeals. *Reversed.*

*J. M. Barrett* and *S. L. Morris,* for appellant.

BLACK, J.—In an action brought by certain persons composing the firm of D. McDonald & Co., who are among the appellees herein, against the Plymouth Cycle Manufacturing Co., also an appellee, wherein the plaintiffs recovered a judgment at law for a certain sum, the appellee Leander J. Southworth, upon the order of the court, became receiver for the defendant company, and as such took charge of its assets. The receiver made a final report to the court, showing a balance of $1,241.11 in his hands. In this report the receiver stated that John H. Bass, who

is the appellant herein, as surviving partner of the firm of Bass & McDonald, had filed his petition in the court below for an order directing the receiver to pay the entire amount of said balance in his hands to said Bass, upon grounds stated in his petition. The receiver in the report also stated that demurrers were filed to the petition of Bass which had not yet been ruled upon. The receiver prayed the court to enter an order directing him as to the payment of the balance in his hands. The appellant filed an amended, verified cross-complaint against the plaintiffs and the defendant in the original action and the receiver therein, and against a large number of persons and companies, who are the other appellees herein, and who were creditors of the appellee, the Plymouth Cycle Manufacturing Co., and who had proved their claims and filed them with the receiver, pursuant to order of court. Demurrers to this cross-complaint for want of sufficient facts, filed by the receiver and by a large number of creditors of the Plymouth Cycle Manufacturing Co., who are appellees, were sustained, and the appellant electing to abide by his cross-complaint, the court adjudged that he take nothing thereby, and that the defendants thereto recover of him their costs. The court thereupon approved the final report of the receiver, and ordered him to pay out and distribute the balance of $1,241.11 in his hands *pro rata* among the general creditors of the Plymouth Cycle Manufacturing Co. entitled thereto, in proportion to the amounts of their respective claims and judgments.

The appellant has presented by his assignment of errors the action of the court upon the demurrers to his cross-complaint. The cross-complaint showed that on the 18th of June, 1896, the appellee, the Plymouth Cycle Manufacturing Co., a corporation organized under the laws of this State, executed to the firm of Bass & McDonald, of which the appellant is the surviving partner, a chattel mortgage on all the property owned by the mortgagor,

which mortgage was duly recorded, etc., and at the same time the said company assigned, transferred, and pledged to said firm all the notes, accounts, and other property of every kind owned by the company, and then put the firm in full possession of all the company's property and assets of every kind, to secure the payment of a number of notes, particularly described, executed at various dates stated, by said company to different payees named, by whom they were indorsed in writing on the backs thereof to said firm, for various sums amounting to $23,781.63; also certain other notes described, executed by said company to said firm amounting to $26,500. The pleading further showed the appointment and qualification of the receiver for said company, and alleged that on, etc., he filed in the court below his application for an order to sell all the property of the company, and made Bass & McDonald parties to the petition, to which they appeared and filed their answer and cross-complaint, and on, etc., they duly recovered judgment in said cause against said company for $40,541.48, without relief from valuation or appraisement laws, and a decree foreclosing their said lien and mortgage against all the property owned by the company, and decreeing them to have a first lien upon all the property, which decree directed them to deliver to the receiver all of the property so mortgaged and pledged, to be sold, transferring their liens to the proceeds of such sale, and directing the receiver to sell the property at public auction at the factory of the company, without relief from valuation or appraisement laws, to the highest bidder for cash, after having given fifteen days' notice thereof by posting at least five notices in public places in the city of Plymouth, and that the receiver apply the proceeds as follows: (1) To the costs of said action; (2) to the payment of himself for his expenses and services to date, and including the sale, $1,000, to be paid out of the property; (3) the amount so found due Bass & McDonald; (4) after these payments,

to the payment of an amount found due to one Shanklin; the balance, if any, to abide the order of the court.

It was alleged that at the same time Bass & McDonald, pursuant to the order of the court, turned over and surrendered to the receiver all the property and the accounts and bills receivable so mortgaged, assigned, and pledged to them, under an agreement with the receiver, and by and through an order of the court; that the lien of Bass & McDonald was transferred to the proceeds of sale of the property, and of the collection of the accounts and bills receivable; that the receiver in accordance with the order of the court, duly advertised the mortgaged property for sale on the 10th of December, 1896, and on that date offered it for sale at public auction, in bulk and for cash, to the highest bidder; that at said sale Bass & McDonald bid for all the property covered by the mortgage the sum of $15,000, this being the highest amount bid therefor, and it was by the receiver openly struck off and sold to Bass & McDonald for that sum, and the sale was reported to the court; that on the 6th of December, 1896, Josiah Parkhurst, Dudley Parkhurst, and J. W. Wilkinson, composing the firm of Parkhurst & Wilkinson, and one G. G. Brandenburg, claiming to be creditors of the defendant company, filed their objections to the confirmation of the sale, stating in their objections that the price for which the property was sold was much below the value thereof, and it would bring a much larger sum upon a resale, and thereupon petitioned the court to set aside said sale, and in their petition offered and proposed to the court, in writing, that if the court would set aside the sale to Bass & McDonald, and fix a time not less than twenty days from December, 1896, for the resale of the property, and cause the sale to be advertised in metropolitan and bicycle papers of general circulation, they would guarantee to the receiver that they would bid or cause to be bid therefor at least ten per cent. more at said sale than was bid at the

sale of December 10, 1896, and that as evidence of their good faith they offered to and did deposit with the clerk of the court $2,000, agreeing that this sum should be forfeited to the receiver if they failed to bid or cause to be bid a sum equal to an advance of ten per cent. on the price at the former sale; that on, etc., the court sustained the objections of Parkhurst & Wilkinson and Brandenburg, and one Peter Ulerich who also filed objections to the sale and to the confirmation thereof, and thereupon the court refused to confirm the report of the receiver, and set aside the sale, and Parkhurst, Wilkinson, and Brandenburg deposited with the clerk as a guaranty that they would bid or cause to be bid, upon a subsequent offer of sale of the property, a sum equal to ten per cent. in excess of the $15,000 so bid by Bass & McDonald, and would take or cause to be taken the property at the sum bid therefor, and pay the total bid therefor, in conformity with the order of the court; and the court thereupon ordered that said sum of $2,000 should be forfeited to the receiver, should Parkhurst, Wilkinson, and Brandenburg fail to perform substantially the terms of their proposition, and further ordered the property to be readvertised and again offered for sale on the 20th of January, 1897, to the highest bidder for cash, and thereupon the receiver was ordered to advertise the property for sale at public auction on the premises where the factory of the company was located, after certain publications stated in detail in the pleading, on the date last mentioned, between certain hours stated, to the highest bidder for cash; that the receiver duly advertised the property for sale in, etc. (the manner of advertising being set forth), as ordered by the court, and at the time so advertised, and in all respects pursuant to the order of the court, he offered all the property for sale in bulk, and at this sale Bass & McDonald again bid for the property $15,000, and that being the highest and best bid the receiver again openly struck off and sold the property

to Bass & McDonald; that Parkhurst, Wilkinson, and Brandenburg wholly failed and refused to make any offer or bid in advance of $15,000; that on the 30th of January, 1897, after due notice to Parkhurst, Wilkinson, and Brandenburg, and upon notice of the receiver, it was adjudged and decreed by the court that said $2,000 so paid into the clerk's office be forfeited for their failure to comply with their proposition and agreement made in open court and filed by them, and that said sum was then considered and adjudged to be forfeited to the receiver, that the same belonged to him, and the clerk was ordered to, and did, pay over said sum into the hands of the receiver, who thereupon received the same from the clerk; that the receiver did not come into possession of any of the property belonging to said company other than the property so pledged and mortgaged to Bass & McDonald, which was all the property owned by the company, upon all of which they had a first and prior lien to secure the payment of said indebtedness to them.

It was averred that by the setting aside and postponing of the sale of December 10, 1896, Bass & McDonald were greatly hindered and delayed in selling and disposing of the property, and prevented from making sale of it in bulk to would-be purchasers, and were further prevented from getting possession thereof in satisfaction of their debt, and manufacturing the same into bicycles in time to meet the demand of the market for the coming season, and were damaged to the amount of said deposit so forfeited; that the property so mortgaged and pledged to Bass & McDonald was wholly insufficient to pay said indebtedness and judgment in their favor secured by the property, and there is still due and unpaid to them, after the application of all the proceeds of said sale of the property and all other property belonging to the company and in the hands of the receiver, or so pledged, mortgaged, or assigned to them, the sum of $33,000 upon said judgment and decree of fore-

closure in their favor; that the sum so deposited and for-
feited to the receiver in equity stands as additional secu-
rity for the payment of said judgment, and in equity be-
longs to this cross-complainant until the judgment is fully
paid, because, as he avers, inasmuch as Bass & McDonald
had a first and prior lien upon all the property and assets
of every kind and description of the company, the other
creditors of the company could not obtain or receive any-
thing until their claim was first fully paid; that the plain-
tiffs in the action of D. McDonald & Co. against the Ply-
mouth Cycle Manufacturing Co. and the other defendants
hereto, who have and claim no security, or whose liens and
securities, if any, upon said property, are junior and sub-
ject to the lien of Bass & McDonald, are claiming but are
not entitled to share in the distribution of said funds now
in the hands of the receiver, who refuses to pay the same
to this cross-complainant upon said unpaid balance of said
judgment and decree, though often demanded so to do,
which balance in his hands is wholly insufficient to pay
the balance unpaid on said judgment in favor of Bass &
McDonald.

It is further averred that the costs and expenses of the
receivership subsequent to said sale have exceeded $2,000,
which have been paid out of the proceeds of the sale of the
property so mortgaged and pledged to Bass & McDonald;
that said costs and expenses should have been taken and
paid out of the $2,000 so forfeited, in preference to the
proceeds of the sale of the property and notes and accounts
in the hands of the receiver; that the receiver has on hand
and ready for distribution upon final report of his trust
$1,241.11, which is wholly insufficient to pay the unpaid
balance of said judgment, and which the other creditors
of the Plymouth Cycle Manufacturing Co. are demanding
that the receiver shall pay to them upon their claims.
Prayer, that the receiver be ordered to pay over said bal-
ance to the cross-complainant, "to be applied upon said un-

paid balance of said judgment in favor of said Bass & McDonald against the said Plymouth Cycle Manufacturing Company aforesaid, and for all other proper relief."

We are not called upon to determine as to the propriety of the action of the court in setting aside the first sale and ordering a resale, or as to the propriety of the conditions upon which the application was sustained and the resale was ordered. No ground for a resale seems to have been presented, except the mere alleged inadequacy of the price; the good faith of the applicants being vouched for by a guaranty or pledge of the sum deposited by them with the clerk. If that action of the court were before us for review, we need not now decide whether or not we would approve it as a proper exercise of the court's discretion. In case of a judicial sale, undoubtedly the court has a measure of discretion as to ordering or refusing a resale. *Pewabic Mining Co.* v. *Mason,* 145 U. S. 349, 12 Sup. Ct. 887, 36 L. Ed. 732. In *Sowle* v. *Champion,* 16 Ind. 165, it was said that the rule seems to be well settled that inadequacy of price is insufficient to invalidate a judicial sale, unless there be additional circumstances to justify it; and in *Benton* v. *Shreeve,* 4 Ind. 66, it was said that gross inadequacy of price is not sufficient, of itself, to set aside a judicial sale, but may be a controlling element in connection with other circumstances. See, also, *Roe* v. *Ross,* 2 Ind. 99; *Swope* v. *Ardery,* 5 Ind. 213; *Bertenshaw* v. *Moffitt,* 6 Ind. 464; *Dawson* v. *Jackson,* 62 Ind. 171; *Harlan* v. *Stout,* 22 Ind. 488; *Seller* v. *Lingerman,* 24 Ind. 264; *In re Third Nat. Bank,* 4 Fed. 775, 9 Biss. 535; *Harris* v. *Gunnell* (Ky. App.), 9 S. W. 376; Jones on Mort., §1639 *et seq.* and §1668 *et seq.;* Rorer on Jud. Sales, §578 *et seq.*

However, we have to do only with the accomplished facts as shown by the appellant's petition. There was not, in fact, any upset bid, but the sale was set aside and a resale was ordered upon a deposit of a certain sum upon a condi-

tion that it should be forfeited if the junior creditors who made the deposit, or some other person, should not bid a sum ten per cent. in excess of the former bid. A sale for the sum thus in excess of the amount first bid, or exceeding that amount by a sum equal to the whole amount of the deposit, would not have benefited the depositors or any other of the creditors whose claims or liens were junior to that of Bass & McDonald, whose lien was for a much greater amount than that for which the property would have sold in such event. A sale for an increased price, while exhausting all the property of the insolvent company in the hands of the receiver, would have satisfied a greater amount of the judgment of Bass & McDonald against the company, leaving a large portion of that judgment unsatisfied, and all subordinate liens and claims wholly unpaid, and without any source from which any portion thereof could be paid. The property, for the purposes of the case, must be regarded as of the value of the amount for which it would sell,—no more and no less. Bass & McDonald alone would have been benefited by a sale for the higher price guaranteed. The resale for the same amount as that bid at the first sale left the amount of their judgment unsatisfied greater than it would have been if on the resale the amount guaranteed had been bid. They hold judgment over against an insolvent corporation for a larger amount because of the failure of those who by their deposit secured the resale to perform their guaranteed undertaking. The forfeited deposit could not be regarded, under the circumstances of the case, as intended at any time for the benefit of the general creditors or otherwise than as an indemnity to the judgment creditors who were the purchasers at the first sale, and who became the purchasers at the resale. The court, not requiring or providing for an actual bid from the applicants for a resale, accepted the deposit as security for the promise of an increased bid, and the property being sold without such in-

creased bid, the court forfeited the deposit, without any objection or exception, and ordered that the balance thereof remain in the hands of the receiver to be distributed among the general creditors, thereby providing for a return of a portion thereof to the defaulting depositors, and adjudged that the appellant take.nothing by his cross-complaint.

A portion of the costs and expenses appears to have been paid out of the deposit, and a portion out of the proceeds of the sale; the remainder of the purchase price being credited upon the judgment, leaving a certain large part of the judgment unsatisfied. The appellant does not seek payment to him of the amount so held by the receiver without an application thereof to the satisfaction *pro tanto* of his judgment over, which would be, it would seem, an inequitable relief; but by his petition he seeks to have that balance in the receiver's hands applied upon the judgment, thereby reducing his judgment over. The undertaking on which the resale was ordered was substantially that the deficiency on the first sale should be diminished, thereby making smaller the amount of the mortgagee's judgment over, and the forfeited fund should be applied to accomplish such result. Furthermore, it was alleged in appellant's petition that the costs and expenses of the receivership subsequent to the first sale amounted to more than the amount deposited and forfeited. It is equitable to apply the forfeited money to such costs and expenses. It does not appear that the mortgagees, who purchased the property at the judicial sale, were in any manner chargeable with any fault; but it does appear that without their default in any regard they alone, and not the general creditors, have been injured by the granting of the resale, and the failure of those who procured it to fulfill their undertaking to procure the higher bid.

Whatever may be said as to the propriety of ordering the resale in the manner and on the terms adopted, we are of the opinion that, having so proceeded, the court should

have treated the deposit as an indemnity to the purchasing judgment creditors, and in ordering the disposition of the surplus thereof, after the payment of the costs and expenses not paid out of the proceeds of the sale, should have directed that the remainder be paid over by the receiver to the appellant. The facts stated in the appellant's petition or cross-complaint seem to us sufficient to authorize and require the relief specially prayed therein. Judgment reversed.